# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT ROPER, ) | |
| ) | No. 11 C 3628 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the U.S. Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Robert Roper ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his Social Security disability benefits under Title II ("DIB") of the Social Security Act ("the Act"). Plaintiff filed a motion for summary judgment [43] and the Commissioner has filed a cross-motion for summary judgment [51]. After reviewing the record, the court grants Plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment.

## BACKGROUND

**I.   Procedural History**

Plaintiff filed a DIB application on May 18, 2007, alleging a disability onset date of October 31, 2006, due to constant pain because of a ruptured disk at L5. (R.115-21, 714.) His initial application was denied on August 31, 2007, and again at the reconsideration stage on November 30, 2007. (R. 67-68.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on January 8, 2008, and the hearing was scheduled on October 8, 2008. (R. 36-66,

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

77-78.) On October 29, 2009, the ALJ issued a written decision denying Plaintiff's application for DIB benefits. (R. 7-18.) The Appeals Council ("AC") denied review on April 15, 2011, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Following the ALJ's written decision, on February 23, 2010, Plaintiff underwent back surgery to repair the L5-S1 nerve. (R. 583.) During the surgery, a Gill fragment was discovered and noted to be very visible. (R. 585.) A gill laminectomy at L5 was performed for bilateral decompression of the exiting L5 nerve root, as well as posterior lumbar interbody fusion L5-S1 and posterolateral arthrodesis L5-S1 with local bone autograft and bone morphogenic protein. (R. 583-84.)

The Plaintiff then appealed the case to the U.S. District Court of the Northern District of Illinois. On August 21, 2012, this Court granted Roper's motion for summary judgment and remanded the action for further proceedings. *Roper v. Astrue*, No. 11 C 3628, 2012 WL 3638045 (N.D. Ill. Aug. 21, 2012); (R. 714-35.) The Plaintiff's back surgery was one of the main reasons that this Court believed that a remand was appropriate. The Court reasoned that "the surgery appears to closely relate to the treatment plaintiff was receiving prior to the ALJ's decision," and constituted "new and material objective evidence that is related to the plaintiff's original DIB application." *Id*. at *8. The Court ordered the ALJ to consider the new and material evidence on remand. *Id.*

On July 23, 2013, a second administrative hearing was held before an ALJ. Roper personally appeared and testified at the hearing and was represented by counsel. (R. 637-701.) A Medical Expert ("ME"), Dr. Carl Leigh, and Vocational Expert ("VE") also appeared and

testified. (*Id.*) At the hearing, the ME was questioned by Plaintiff's counsel about the Planitiff's 2010 back surgery. When Plaintiff's attorney asked the ME about the Gill fragment, the ME replied, "[a] what fragment?" (R. 685.) Plaintiff's attorney repeated himself, and the ME replied "I don't know what a Gill fragment is." (R. 685-86.) Thereafter, Plaintiff's attorney educated the ME about a Gill fragment. (R. 686.) Plaintiff's attorney then asked the ME, before the Gill fragment was removed whether the Gill fragment would have explained the back symptoms that Plaintiff was complaining about or would it have helped explain. (*Id.*) The ME replied, "to be honest with you, I don't know one way or the other." (*Id.*) On August 30, 2013, the ALJ again denied Roper's claim for DIB from the period of October 31, 2006 through the date of the decision. (R. 629.) On March 30, 2015, the AC again declined to assume jurisdiction, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g).

## II.    ALJ Decision

On August 30, 2013, the ALJ issued a written determination denying Plaintiff's DIB application. (R. 602-29.) As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2016. (R. 607.) At step one, the ALJ determined that Plaintiff did not engage in Substantial Gainful Activity ("SGA") since his alleged onset date of October 30, 2006. (*Id.*) At step two, the ALJ found that Plaintiff had the severe impairments of heart impairment, status post lumbar spine fusion, and history of varicose veins. (R. 608.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (*Id.*) Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work. (*Id.*) The ALJ also found that

3

Plaintiff's RFC was further limited to lifting/carrying up to twenty pounds occasionally and ten pounds frequently; standing/walking three hours in an eight hour workday; sitting about six hours in an eight hour workday with a sit/stand option at will for five minutes, after sitting for twenty five minutes. (*Id.*) Plaintiff would be able to maintain concentration and perform work-related tasks when standing and/or walking; occasionally could operate foot controls with either foot; no climbing ladders, ropes, or scaffolds; occasional climbing of ramps, stairs, stooping, bending, crouching and crawling; no limits on balancing and no manipulative limitations; must avoid concentrated exposure to extreme cold, should not be exposed to slippery, wet surfaces as part of the job; and may have no concentrated exposure to hazards such as dangerous moving machinery or unprotected heights, meaning that he should not be required to pass closer than body length from dangerous, moving machinery, or unprotected heights, and should not be required to drive as part of the job. (R. 608-09.) At step four, the ALJ concluded that Plaintiff could not perform any of his past relevant work. (R. 628.) Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 628-29.) Specifically, the ALJ found that Claimant could work as an order clerk, telephone clerk, or account clerk. (R. 629.) Because of this determination, the ALJ found that Claimant was not disabled under the Act. (*Id.*)

## STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a) and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28

L.Ed.2d 842 (1971). Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). A "minimal[ ] articulat[ion] of her justification" is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

## ANALYSIS

Plaintiff asserts that the ALJ made three errors. First, Plaintiff argues that the ALJ's credibility determination was inadequate. Second, Plaintiff argues that the new and material evidence was not properly considered. Lastly, Plaintiff argues that the RFC was flawed because all of the medical evidence was not considered. The Court agrees with Plaintiff and finds that in regard to these areas, the ALJ's decision was not supported by substantial evidence.

**A.    Credibility**

Plaintiff asserts that despite the ALJ's lengthy and comprehensive discussion of the medical evidence, her credibility determination was inadequate. (Pl.'s Mem. at 11.) Plaintiff contends that the ALJ's recent finding that Plaintiff had engaged in heavy manual labor for several days in July of 2007, was rejected by this Court in its prior decision. *Roper v. Astrue*, No. 11 C 3628, 2012 WL 3638045, at *9 (N.D. Ill. Aug. 21, 2012); (Pl.'s Mem. at 11.) The Commissioner responds that "the ALJ noted that, in July of 2007, Plaintiff described doing heavy manual labor over the past several days with his father-in-law," and that "[t]he ALJ explicitly considered and rejected Plaintiff's subsequent allegation that the doctor misunderstood and that Plaintiff was not actually performing heavy labor, instead he was watching." (Def.'s Mem. at 7; R. 624.) The Commissioner contends that the ALJ's credibility finding was not based on Plaintiff's actions of performing the alleged heavy labor, but in his explanation of those alleged actions. (Def.'s Mem. at 7-8.)

5

The Commissioner's argument is unpersuasive. The ALJ noted that Plaintiff claimed to be capable of very limited activities of daily living due to his combination of impairments, but believed that Plaintiff was capable of performing more than he alleged. (R. 624.) Thereafter, the ALJ specifically noted Plaintiff's alleged manual labor of July 2007, and stated that the doctor's notes indicated that "[Plaintiff] worked up a good sweat and was able to continue digging down five feet." (*Id.*)

In our first decision of this case, we noted that the problem with the ALJ's credibility determination was that it was based on only one sentence describing Plaintiffs alleged heavy manual labor, and nothing else. *Roper*, No. 11 C 3628 2012 WL 3638045, at *9; (R. 731-32.) This Court also relied on the decision of *Goble v. Astrue*, 385 F. App'x 588, 592 (7th Cir. 2010), which found that a "claimant's ability to perform limited and sporadic tasks does not mean she is capable of full time employment," especially when the claimant must be off task due to specific limitations related to the disability. *Roper*, No. 11 C 3628 2012 WL 3638045, at *9; (R. 732.) In this case, the ALJ's credibility determination deficient and unsupported by substantial evidence again. The ALJ may not make a credibility determination on activities of daily living based on one sporadic task throughout the record.

The rest of the ALJ's credibility determination is equally troubling. First, Plaintiff testified at both hearings that he had to nap as a result of his medications. *Roper*, No. 11 C 3628 2012, WL 3638045, at *4; (R. 46, 58, 623, 649, 733.) However, the ALJ explained that she agreed with Dr. Leigh's testimony that the record lacked any notations or medical records about Plaintiff needing to nap every day. (Def.'s Mem. at 6; R. 623, 673.) However, during the hearing, Plaintiff's attorney confronted Dr. Leigh with a February 13, 2009, and a March 20, 2009, examination by cardiologist, Kirkeith Lertsburapa, M.D. (R. 508-09.) On both occasions,

Dr. Lertsburapa noted that Plaintiff reported that he was excessively sleepy during the daytime. These records directly contradict the ME's statement that there were no notations in the medical record about napping, which the ALJ apparently on in making the credibility determination. (R. 673.) The ALJ did not consider this contradictory evidence, and provided no analysis of how this evidence weighed into the credibility determination.

Next, Plaintiff contends that the ALJ drew a negative inference from his lack of medical treatment without asking or considering his explanation of why treatment was not obtained. (Pl.'s Mem. at 13.) The Commissioner responds that even if such an omission was erroneous it does not undercut the other valid reasons for discounting Plaintiff's testimony. (Def.'s Mem. at 8-9.) The Commissioner further contends that Plaintiff failed to explain how he was harmed by the ALJ's failure to explore his reasons for not complying with treatment recommendations relying on *Summers v. Colvin*, 634 F. App'x 590 (7th Cir. 2016). (Def.'s Mem. at 9.) In *Summers* is not analogous to this case because there the Seventh Circuit stated that "the ALJ did not draw an adverse inference about Summers' credibility from any lack of treatment. Rather, the ALJ's mention of the gaps in treatment was related to his point that the treatment Summers did receive was conservative." *Summers v. Colvin*, 634 F. App'x at 592.

This is not the case here. The ALJ did not argue that Plaintiff was receiving conservative treatment, she was arguing that Plaintiff was not credible because "despite allegations of such severe limitations, [Plaintiff] ha[d] not always been compliant with treatment." (R. 624.) *See Craft v. Astrue,* 539 F.3d 668, 679 (7th Cir.2008). An ALJ must inquire into the claimant's reasons before relying on the absence of medical treatment to support an adverse credibility finding. Further, while Plaintiff never explained why he was harmed by the ALJ's failure to explore the reasons for not complying with treatment recommendations, Plaintiff's argument still

7

supports this Court's conclusion, that the ALJ failed to support his credibility finding with substantial evidence.

Additionally, the Social Security Administration (the "Administration") has recently updated its guidance about evaluating symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." (*Id.* at *1). Though SSR 16-3p post-dates the ALJ hearing in this case, the application of a new social security regulation to matters on appeal is appropriate where the new regulation is a clarification of, rather than a change to, existing law. *Pope v. Shalala*, 998 F.2d 473, 482-483 (7th Cir. 1993). In determining whether a new rule constitutes a clarification or a change, courts give "great weight" to the stated "intent and interpretation of the promulgating agency." (*Id.* at 483). Though a statement of intent is not dispositive, courts defer to an agency's expressed intent to "clarify" a regulation "unless the prior interpretation…is patently inconsistent with the later one." (*Id.*); *see also First Nat. Bank of Chicago v. Standard Bank and Trust,* 172 F.3d 472, 479 (7th Cir. 1999), *Homemakers North Shore, Inc. v. Bowen,* 832 F.2d 408 (7th Cir. 1987).

Here, the Administration has in its new Social Security Ruling specified that its elimination of the term "credibility" in subjective symptom evaluation is intended to "clarify" its application of existing rules and to "more closely follow our regulatory language regarding symptom evaluation." SSR 16-3p, 2016 WL 1119029 at *1. Moreover, the two Social Security Rulings are not patently inconsistent. Indeed, a comparison of the two reveals substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms. *Compare* SSR 16-3p *and* SSR

96-7p. Stated differently, "[t]he agency has had only one position, although it has expressed that position in different words." *Homemakers N. Shore, Inc. v. Bowen*, 832 F.2d at 413. Therefore, it is appropriate to evaluate Plaintiff's subjective complaints in light of the new guidance the Administration has provided, and the ALJ should follow the SSR 16-3p on remand.

**B.   New and Material Evidence.**

Plaintiff asserts that this case was principally remanded for consideration of new and material evidence; specifically, Plaintiff's Gill laminectomy at L5 and transforaminal lumbar fusion at L5-S1, performed on February 23, 2010,[2] and relating back to his lower back pain prior to the first ALJ decision. *Roper*, No. 11 C 3628 2012 WL 3638045, at *8; (Pl.'s Mem. at 13.) Plaintiff contends that the ALJ failed to comply with this Court's remand order and the subsequent order of the Appeals Council to evaluate new and material evidence, because the ME obtained by the ALJ did not know what a Gill fragment was and did not know whether it would explain the back symptoms Plaintiff complained about. (Pl.'s Mem. at 14; R. 626, 685-686.)

The Commissioner responds that the ALJ complied with the District Court's remand order because the ALJ obtained a medical expert, even though one was not required, and that Plaintiff had no objections to Dr. Leigh testifying as an ME in the case. The Court reminds the Commissioner that according to federal regulations and case law, at step three, an ALJ must consider whether a claimant's impairments meet or medically equal a listed impairment, either singly or in combination. 20 C.F.R. § 405.1520(a)(4)(iii). Additionally, the ALJ must obtain the opinion of a medical expert on the issue. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir.2004). Regarding the Plaintiff's failure to object to the ME, the ME testified at the beginning of his sworn testimony that he had reviewed all of the medial evidence. At that juncture, the Plaintiff

---

[2] Plaintiff's memorandum refers to February 21, 2010 as the date of surgery. (Pl.'s Mem. at 13.) However, the record indicates that Plaintiff was admitted for surgery on February 21, 2010, and that the surgery was actually performed on February 23, 2010. (R. 569.)

9

was unaware that the ME was unqualified to give an opinion on a Gill fragment, which is why there was no objection lodged at that time.

Next, the Commissioner contends that even though the ME's ignorance of Gill fragment was not a critical flaw, and the ALJ did not abuse her discretion by declining to obtain additional medical expert testimony from an orthopedist about the Gill fragment. The Commissioner's argument is once again unpersuasive. This Court was explicit in its initial *Roper* decision, that "[b]ecause the surgery appears to closely relate to the treatment Plaintiff was receiving prior to the ALJ's decision, we find that it is new and material objective evidence that is related to the Plaintiff's original DIB application. Therefore, the ALJ should consider this new and material evidence." *Roper*, No. 11 C 3628 2012 WL 3638045, at *8; (R. 731.) The ME's testimony demonstrates that the ALJ did not obtain a medical expert who was knowledgeable and capable of rendering an opinion on the new and material evidence that necessitated the remand. By failing to do so, the ALJ herself was not able to properly consider the new and material evidence as ordered by this Court in its original *Roper* opinion.

The ALJ attempted to explain away the ME's lack of knowledge of Gill fragments, writing that "[t]here is no indication that Dr. Leigh's lack of knowledge about this specific type of fragment is a critical flaw, rendering him unable to testify as to the claimant's impairments, listing, or functioning." However, that is precisely the indication. "An ALJ has a duty to fully develop the record before drawing any conclusions." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). A "Gill fragment" of the spinal lamina is considered to be one of the sources of lower back pain.[3] As Plaintiff suggests, and this Court agrees, this would corroborate Plaintiff's

---

[3] Valery Berkin, M.D. et al. *Spondylolysis and spondylolisthesis: prevalence and association with low back pain in the adult community-based population*, National Center for Biotechnology Information, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3793342/

complaints of pain during the period at issue. Dr. Leigh admitted that he was unaware of what a Gill fragment was or the impact it could have on Plaintiff's functioning. The Court believes that given the potential correlation of the Gill fragment on Plaintiff's back pain, Dr. Leigh's lack of knowledge about the condition rendered him unable to fully determine the Plaintiff's impairments or functioning. Because Dr. Leigh could not testify to the impact that the Gill fragment had on Plaintiff's impairment, it was incumbent upon the ALJ to secure another medical expert that could give a qualified opinion as to Plaintiff's back impairment and functioning. By failing to do so, the ALJ failed to fully develop the record before drawing conclusions about Plaintiff's functioning.

**C.     RFC**

Because it was established that the ALJ relied on the ME's flawed opinion in forming Plaintiff's RFC, Plaintiff's arguments concerning the ALJ's RFC errors need not be fully addressed. However, the Court notes that just as the ME overlooked medical evidence regarding the Plaintiff's excessive daytime sleepiness, he also overlooked medical evidence of Plaintiff's varicose veins and edema. (R. 217, 667, 1276.) The ME later recanted his statements regarding Plaintiff's varicose veins and edema, and admitted that the evidence contradicted his opinion. (R. 684.) The Commissioner responds that the ALJ considered and fairly assessed Plaintiff's varicose veins, and that Plaintiff's alleged need to elevate his legs in the evening would not impact his ability to function at work. Although the ALJ considered all of the medical evidence in evaluating Plaintiff's varicose veins and edema, her finding that Plaintiff would still be able to function at work is illogical. The ALJ assumes that if Plaintiff were to be gainfully employed that he would be working a standard 9am-5pm schedule, and would not have to work during

evenings when his legs would require elevation. However, this is at best an assumption that is not grounded in fact or supported by substantial evidence.

Because this Court agrees that the RFC assessment was erroneous and not supported with substantial evidence, the Court need not address the remaining deficiencies. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found. Indeed, the Court admonishes the Commissioner that, on remand, special care should be taken in completely re-evaluating Plaintiff's RFC.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. This matter is remanded for further proceedings consistent with this opinion.


**ENTERED:**

**DATE:   7/21/2016**                              _____
                                                                       **U.S. MAGISTRATE JUDGE, SUSAN E. COX**